# United States Court of Appeals
# for the Fifth Circuit

———————————

No. 23-40035

———————————

United States Court of Appeals
Fifth Circuit

**FILED**
August 21, 2024

Lyle W. Cayce
Clerk

Sonya Porretto,

*Plaintiff—Appellant*,

*versus*

The City of Galveston Park Board of Trustees; The City of Galveston, Texas; Texas General Land Office; Dawn Buckingham, *Commissioner of the Texas General Land Office*,

*Defendants—Appellees*.

———————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:21-CV-359

———————————————————

Before King, Jones, and Oldham, *Circuit Judges*.[*]

King, *Circuit Judge*:

Plaintiff-Appellant Sonya Porretto is the owner of Porretto Beach in Galveston, Texas. In 2009, Porretto filed for bankruptcy in the U.S. Bankruptcy Court for the Southern District of Texas, and her case was converted to a Chapter 7 proceeding. In 2020, the trustee of Porretto's bankruptcy estate abandoned the Porretto Beach property back to Porretto.

———————————————

[*] Judge Oldham concurs in the judgment only.

No. 23-40035

A year later, Porretto filed an adversarial lawsuit in the bankruptcy court against the City of Galveston Park Board of Trustees ("Park Board"), the City of Galveston, the Texas General Land Office ("GLO"), and the GLO's Commissioner, alleging, *inter alia*, that Defendants-Appellees' actions at Porretto Beach constituted takings without just compensation in violation of the Fifth Amendment. Porretto's case was transferred to the U.S. District Court for the Southern District of Texas, which dismissed Porretto's lawsuit, concluding: (1) Porretto lacks standing to sue the GLO and its Commissioner; (2) the court lacks bankruptcy jurisdiction under 28 U.S.C. § 1334; and (3) the court lacks federal question jurisdiction under 28 U.S.C. § 1331.

We agree with the district court that Porretto lacks standing to sue the GLO and its Commissioner because her complaint fails to establish a causal nexus between these Defendants-Appellees' actions and Porretto's alleged injuries, but we note that this deficiency in Porretto's pleadings could potentially be redressed via an amended complaint. Regarding Porretto's remaining claims against the Park Board and the City of Galveston, we agree with the district court that exercising bankruptcy jurisdiction under § 1334 would be improper here, but we conclude that the court does have federal question jurisdiction over Porretto's constitutional claims.

Accordingly, we AFFIRM the district court's dismissal of Porretto's claims against the GLO and its Commissioner without prejudice. We VACATE the district court's dismissal of Porretto's remaining claims against the Park Board and the City of Galveston, and we REMAND for the district court to consider alternative arguments for dismissal in the first instance, as well as the issue of supplemental jurisdiction over Porretto's state law claims. We also AFFIRM the district court's decision to deny Porretto leave to amend her complaint, though we note that Porretto may file a motion for leave to amend on remand to address her complaint's

deficiencies if she so chooses. Finally, we AFFIRM the district court's order denying Porretto's motion for recusal, and we DENY Porretto's request for her case to be reassigned to a judge in the Houston Division on remand.

## I.

### A.

Plaintiff-Appellant Sonya Porretto is the owner of Porretto Beach, one of the rare privately owned sections of the Texas coastline. Porretto Beach is generally identified as the beach along the Galveston Seawall from 6th to 10th (sometimes referred to as "Porretto Beach Classic"), 11th to 12th, 14th to 16th, 19th to 21st, and 26th to 27th streets. In 2014, after years of litigation between the Porretto family and the GLO, the Supreme Court of Texas affirmed that the Porretto family owns the property conveyed to them that lies landward of the "mean higher high tide line," defined as "the average of highest daily water computed over or corrected to the regular tidal cycle of 18.6 years." *See Porretto v. Tex. Gen. Land Off.*, 448 S.W.3d 393, 395, 400 (Tex. 2014) (internal quotation omitted).

### B.

In July 2009, Porretto filed a voluntary petition for Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the Southern District of Texas. Porretto claims that she was "forced" to file for Chapter 11 bankruptcy because her ongoing litigation with the GLO made it impossible for her to sell the Porretto Beach property. In December 2011, Porretto's bankruptcy case was converted to a Chapter 7 proceeding, and a trustee was appointed. On June 25, 2020, after the trustee was unable to close on sales of Porretto Beach, the bankruptcy court issued an order abandoning the Porretto Beach property, at which point "the ownership and control of the Porretto Beach property reverted to . . . Porretto." Porretto's bankruptcy estate was deemed

fully administered in April 2022, and the bankruptcy case was closed on June 22, 2022.

## C.

On June 25, 2021, exactly one year after Porretto Beach was abandoned to her, Porretto filed a lawsuit in the U.S. Bankruptcy Court for the Southern District of Texas, naming as defendants the Park Board, the City of Galveston, the GLO, and GLO Commissioner George P. Bush (collectively, "Defendants").[1] In her original complaint, Porretto asserted that the bankruptcy court had jurisdiction pursuant to 28 U.S.C. § 1334(b), because her claims arose under Title 11 or were related to Porretto's then-active bankruptcy case.

In the operative third amended complaint, Porretto alleges that Defendants have taken various actions to "limit her use, control, and operation of Porretto Beach." Porretto first contends that Defendants' work on the "Stewart Beach Drainage Project," a GLO-funded City project aimed at improving drainage conditions at a public beach adjacent to Porretto Beach, has caused, and continues to cause, flooding at Porretto Beach. Porretto includes in her complaint several photos of construction crews purportedly digging trenches and swales that diverted water toward Porretto Beach.

Porretto also contends that the Park Board has excavated sand from Porretto Beach, resulting in manufactured erosion data. She claims that this erosion data is utilized by the Park Board to acquire federal and state

---

[1] Throughout this opinion, we refer to the Park Board and the City of Galveston collectively as the "Galveston Defendants," and the GLO and its Commissioner collectively as the "GLO." Dawn Buckingham currently serves as Commissioner of the GLO and is listed as a Defendant-Appellee in the current appeal.

renourishment funds. Porretto further alleges that during her bankruptcy proceedings, the Park Board leased Porretto Beach to concessionaries and referred to Porretto Beach as if it had authority to lease the property.

Porretto organizes her allegations against Defendants into fourteen discrete causes of action:

- I) a Fifth Amendment claim for the taking of a flowage easement without just compensation;
- II) a Fifth Amendment claim for the taking of "Other Property Interests" without just compensation;
- III) an inverse condemnation claim under Texas law;
- IV) a Fifth Amendment takings claim for interference with Porretto Beach's accretion levels;
- V) a claim under Article I, Section 17 of the Texas Constitution for the taking, damaging, or destruction of property;
- VI) a Fourteenth Amendment claim for depriving Porretto of her property interests in violation of her procedural and substantive due process rights;
- VII) a breach of settlement claim against the Park Board;
- VIII) tortious interference, harassment, and retaliation claims;
- IX) a claim for violation of the Texas Water Code;
- X) a claim seeking an accounting of all funds received from requests that reference any part of Porretto Beach, and reimbursement of funds that were never used to improve Porretto Beach;
- XI) a claim seeking injunctive relief preventing Defendants from referring to Porretto Beach as public property and from further carrying out construction on Stewart Beach without an agreement with Porretto;
- XII) a claim seeking a declaratory judgment that the rights of ways claimed by the City on the Porretto Beach property are terminated or abandoned;
- XIII) a claim seeking a declaratory judgment recognizing Porretto's mineral interests and determining the boundaries of submerged lands allegedly owned by the State;

- XIV) a claim under the Texas Tort Claims Act for damages caused to Porretto Beach by governmental functions.

Within a week of filing her original complaint, Porretto filed a first amended complaint. On August 13, 2021, both the GLO and the Galveston Defendants filed motions to dismiss, asserting that the bankruptcy court lacked jurisdiction to hear the lawsuit. That same day, Porretto filed a second amended complaint without obtaining leave to amend. On September 3, 2021, Porretto filed oppositions to Defendants' motions to dismiss, and she filed amendments to these filings four days later.

Although Porretto never received leave to file a second amended complaint, Defendants filed new motions to dismiss responding to the second amended complaint out of an abundance of caution. Porretto thereafter filed oppositions to this second round of motions to dismiss. Then, on November 13, 2021, Porretto filed a third amended complaint, along with a motion for leave to amend her pleadings.

On December 21, 2021, following a hearing on the motions to dismiss and the motion for leave to amend, the bankruptcy court *sua sponte* transferred the adversarial proceeding to the U.S. District Court for the Southern District of Texas, Galveston Division. About two months later, Porretto filed a motion for a temporary restraining order, requesting that the district court enjoin Defendants from carrying out any construction work related to the Stewart Beach Drainage Project.

On March 7, 2022, the district court denied Porretto's motion for a temporary restraining order, but granted Porretto leave to file a third amended complaint. The district court denied as moot Defendants' live motions to dismiss (which were filed in response to Porretto's second amended complaint), and it instructed Defendants that they could file

renewed motions to dismiss responding to Porretto's live third amended complaint within thirty days.

Defendants filed renewed motions to dismiss on April 22, 2022. In their motions to dismiss, both groups of Defendants argued that the district court lacks bankruptcy jurisdiction over Porretto's lawsuit. Defendants also contended that Porretto's claims are barred by governmental immunities. The GLO's motion to dismiss further argued that Porretto lacks standing to raise her claims against the State, since her complaint alleges no causal connection between her alleged injuries and the GLO's conduct. In addition to raising these jurisdictional arguments, Defendants' motions to dismiss also posited that Porretto's complaint does not state plausible claims for relief. In her oppositions to Defendants' renewed motions to dismiss, Porretto requested that she "be afforded an opportunity to amend the Complaint if the Court deems additional factual allegations are necessary."

On December 7, 2022, the district court granted Defendants' motions to dismiss. Addressing solely the GLO's motion to dismiss first, the district court agreed with the GLO that Porretto's complaint fails to sufficiently allege that the GLO's conduct caused her purported injuries.

The district court also concluded that it could not exercise jurisdiction over Porretto's lawsuit pursuant to 28 U.S.C. § 1334. Regarding § 1334(b), which gives federal district courts jurisdiction over "civil proceedings . . . arising in or related to cases under title 11," the district court concluded that Porretto's claims do not relate to Porretto's bankruptcy case "because the abandoned property is no longer part of the estate nor will the claims affect the bankruptcy case because each of the claims is personal to Porretto, and her bankruptcy case has now been fully administered." The district court also concluded that § 1334(e)(1), which gives "[t]he district court in which a case under title 11 is commenced or is pending . . . exclusive jurisdiction . . .

of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate," also does not apply, reasoning that § 1334(e)(1) does not confer jurisdiction over claims pertaining to property that has been abandoned by the estate.

The district court further concluded that it could not exercise federal question jurisdiction under 28 U.S.C. § 1331. Although Porretto alleged unconstitutional takings in violation of the Fifth Amendment, she did so only through a direct invocation of the federal Constitution. The district court noted that the proper vehicle for asserting a Fifth Amendment takings claim is 42 U.S.C. § 1983, which Porretto did not invoke in her third amended complaint.

After determining that it lacked jurisdiction to hear Porretto's case, the district court denied Porretto another opportunity to amend her complaint. About one month after the district court granted Defendants' motions to dismiss, Porretto filed a motion requesting the recusal of U.S. District Judge Jeffrey V. Brown and the reassignment of her case to a district judge in the Houston Division. In her motion, Porretto raised several of Judge Brown's personal and professional connections that she claimed create the appearance of impropriety. After the district court denied Porretto's motion for recusal, as well as her motion for a new trial, Porretto filed a notice of appeal.

## II.

We review *de novo* the district court's grant of Defendants' motions to dismiss filed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Id.* The plaintiff bears the

burden of proof in establishing that jurisdiction does in fact exist. *Id.* When reviewing a district court's dismissal based on lack of subject matter jurisdiction, "we take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

## III.

Before addressing jurisdiction under 28 U.S.C. § 1334 and 28 U.S.C. § 1331, the district court in its order granting Defendants' motions to dismiss first concluded that Porretto lacks standing to sue the GLO because her complaint does not sufficiently establish a causal link between the GLO's conduct and her alleged injuries. "Constitutional standing has three elements: (1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury." *Croft v. Governor of Tex.*, 562 F.3d 735, 745 (5th Cir. 2009) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). For the causation element of standing to be satisfied, "the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Bennett v. Spear*, 520 U.S. 154, 167 (1997).

We agree with the district court that Porretto's operative complaint is clearly deficient vis-à-vis her claims against the GLO. In fact, Porretto's complaint hardly mentions the GLO at all. For instance, it is true that Porretto alleges generally that "all Defendants" participated in the Stewart Beach Drainage Project that purportedly resulted in flooding at Porretto Beach, but she alleges no facts indicating what role, if any, the GLO played in implementing this project. She similarly alleges no facts indicating that the GLO participated in the Park Board's purported sand mining, only

speculating that the GLO knew or "should have known" about these activities.[2] Porretto's complaint does vaguely allege that the GLO surveyed Porretto Beach, but this allegation lacks any detail about how the survey was performed, and it is difficult to ascertain how this alleged surveying activity resulted in a cognizable injury that fits within her complaint's causes of action.

While Porretto's complaint is deficient in this regard, the record indicates that there may, in fact, be a causal nexus between the GLO and the Stewart Beach Drainage Project. Specifically, record evidence indicates that the project involved comprehensive monitoring by the GLO, which required the Park Board to conduct an environmental assessment for the project and submit periodic progress reports highlighting the project's advancement and setbacks. Additionally, after reviewing the Park Board's project proposal, the GLO submitted comments and recommendations to the Park Board for implementing the project. The grant agreement between the Park Board and the GLO further required the Park Board to coordinate with the GLO prior to engaging with the media and to seek approval from the GLO before making any changes "in the scope of work or budget requests that change the total project cost." Taking this evidence into account, the record contains some indication that the GLO was an active partner with the Park Board in planning and implementing the Stewart Beach Drainage Project.

This case presents us with an admittedly odd scenario: Record evidence indicates that a defendant may, in fact, have been involved in the

_____

[2] The complaint appears to allege that the Park Board utilized manufactured erosion data (purportedly the result of its sand mining) to obtain GLO funding for an "Erosion Response Project a/k/a Seawall Beautification Project" in 2013. But still, the complaint does not allege facts indicating that the GLO was involved in the Park Board's alleged sand mining scheme.

activities that purportedly resulted in the plaintiff's injuries, but the plaintiff has failed to allege this involvement in her complaint. It is true that we have held that courts, when ruling on a motion to dismiss for lack of subject matter jurisdiction, may consider "the complaint supplemented by undisputed facts evidenced in the record." *Ramming*, 281 F.3d at 161. But while it may be permissible for us to *supplement* allegations against the GLO with record evidence, Porretto's complaint is devoid of specific allegations against the GLO in the first place. Plus, even if we concluded that Porretto has standing to sue the GLO, her complaint's failure to raise "a right to relief above the speculative level" vis-à-vis her claims against the GLO would result in the dismissal of these claims regardless. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

At bottom, the cure for a deficient complaint is an amended complaint, not for this court to find standing based on a hypothetical, improved complaint with more facts alleged. Porretto will be free on remand to request leave to file an amended complaint, if she so chooses.[3] However, based on the complaint before us, we cannot say that the district court erred in dismissing Porretto's claims against the GLO for lack of standing. We thus AFFIRM the district court's dismissal of Porretto's claims against the

---

[3] To avoid prejudging any 12(b)(6) issues, we decline to definitively decide whether Porretto would be entitled to such leave from the court; after all, if the district court determines that Porretto's allegations of unlawful activity, when taken as true, fail to state a claim upon which relief can be granted, then it may be futile for Porretto to tack on to her complaint more allegations about the GLO's purported involvement. However, in the event that amendment would not be futile, we note this court's general rule that "[l]eave to amend should be liberally granted, when the plaintiff might be able to state a claim based on the underlying facts and circumstances." *Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*, 103 F.4th 383, 394 (5th Cir. 2024) (quoting *Hernandez v. W. Tex. Treasures Est. Sales, L.L.C.*, 79 F.4th 464, 468 (5th Cir. 2023)).

GLO and its Commissioner without prejudice.[4] For the remainder of this opinion, we address Porretto's remaining claims against the Galveston Defendants.

## IV.

Porretto's third amended complaint asserts that the federal court has jurisdiction pursuant to 28 U.S.C. § 1334 because Porretto's claims "arise[] from or relate[] to" Porretto's bankruptcy case. Her briefing more specifically asserts jurisdiction under both § 1334(e)(1) and § 1334(b). We address each subsection in turn.

## A.

Porretto primarily focuses her jurisdictional arguments on 28 U.S.C. § 1334(e)(1), which grants "[t]he district court in which a case under title 11 is commenced or is pending . . . exclusive jurisdiction . . . of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." Porretto interprets this provision broadly, asserting that when a debtor is in a bankruptcy proceeding, the district court has exclusive jurisdiction over all claims related to her property, including property that has been abandoned by the trustee and is no longer part of the bankruptcy estate.

---

[4] Because we are affirming the district court's dismissal of Porretto's claims against these Defendants, we decline to address Porretto's argument that she has a self-executing right to bring a takings claim against the State of Texas. In *DeVillier v. Texas*, 601 U.S. 285, 292–93 (2024), the Supreme Court declined to answer the question of "whether a plaintiff has a cause of action arising directly under the Takings Clause," since Texas's "state-law inverse-condemnation cause of action provides a vehicle for takings claims based on both the Texas Constitution and the Takings Clause." Of course, *DeVillier*'s holding will be salient if Porretto attempts to amend her claims against the GLO, but we need not prematurely address that issue here.

Contrary to Porretto's interpretation, courts addressing § 1334(e)(1)'s scope have consistently held that § 1334(e)(1) grants federal courts limited, exclusive *in rem* jurisdiction that cannot be exerted over abandoned property.[5] *See, e.g.*, *In re Mitchell-Smith*, No. 21-57646-WLH, 2022 WL 2195466, at *3 (Bankr. N.D. Ga. June 17, 2022) ("Abandonment is an act of jurisdictional significance that removes the abandoned property from the bankruptcy court's exclusive *in rem* jurisdiction." (citing 28 U.S.C. § 1334(e))); *In re Nyamusevya*, No. 19-8027, 2021 WL 193965, at *6 (B.A.P. 6th Cir. Jan. 20, 2021) ("[T]he Trustee had determined . . . that the Property was of inconsequential value or benefit to the estate, and her abandonment was an act of jurisdictional significance, removing the Property from the bankruptcy court's exclusive *in rem* jurisdiction." (citing 28 U.S.C. § 1334(e))); *Lewis v. Harris*, No. 3:08-CV-588 HTW-LRA, 2012 WL 12973188, at *6 (S.D. Miss. Apr. 5, 2012) ("This court immediately recognizes that it does not have jurisdiction under § 1334(e), which provides jurisdiction over property of the estate. As noted above, once the trustee abandoned this case, it was no longer property of the estate and became the property of [the debtor]."); *see also In re Danley*, 552 B.R. 871, 883 (Bankr. M.D. Ala. 2016) ("[A] bankruptcy court's *in rem* jurisdiction [pursuant to 28 U.S.C. § 1334(e)(1)] over property only lasts so long as that property remains in the estate; if the property leaves the estate, *in rem* jurisdiction lapses."); *In re Sindram*, No. 08-00559, 2010 WL 434341, at *2 (Bankr. D.D.C. Jan. 28, 2010) (finding no jurisdiction under § 1334(e), because "[t]he closing of the [bankruptcy] case abandoned the property to the debtor and resulted in the

---

[5] Because we find that the district court correctly held that it could not exercise jurisdiction pursuant to § 1334(e)(1) due to the abandonment of the Porretto Beach property, we need not address the GLO's alternative argument that inverse condemnation/takings actions are not *in rem* proceedings.

No. 23-40035

estate having been fully administered insofar as that property was concerned").

Though none of these authorities are binding on this court, taken together, they do indicate a consensus among federal courts on this issue:

> [T]he exclusive jurisdiction granted in section 1334(e)(1) extends not only to property of the debtor as of the commencement of the case, but also to property of the estate. During the course of title 11 cases in general and of chapter 11 cases in particular, the estate acquires property in addition to or different from the property of the debtor as it existed as of the commencement of the title 11 case. Section 1334(e) makes it clear that both kinds of property are subject to its provisions. *Jurisdiction is lost once the property is no longer property of the estate.* Likewise, the district court has exclusive jurisdiction to determine whether property is property of the estate to begin with.

1 COLLIER ON BANKRUPTCY ¶ 3.01 (Richard Levin & Henry J. Sommer eds., 16th ed. 2024) (emphasis added) (collecting cases); *see also* 5 *id.* ¶ 554.02 ("Usually, abandonment of property will end the court's jurisdiction to determine disputes concerning that property, unless the result of the dispute could have some effect on the bankruptcy case.").[6]

This prevailing interpretation of § 1334(e)(1) appears to align with the provision's function in context. As the U.S. Bankruptcy Court for the District of Columbia explained in *In re Ostroff*, 433 B.R. 442, 452 (Bankr.

---

[6] Without citing § 1334(e)(1) explicitly, this court acknowledged "the general rule that a bankruptcy court loses jurisdiction over assets once they are transferred from the bankruptcy estate" in *In re Skuna River Lumber, LLC*, 564 F.3d 353, 355 (5th Cir. 2009), though that case concerned property sold by the estate, not property that the estate had abandoned back to the debtor. Still, *Skuna River* indicates that a district court's exclusive jurisdiction over property may lapse depending on the status of the property at issue.

D.D.C. 2010), "Section 1334(e) provides that the court has exclusive jurisdiction over the property of the debtor as of the commencement of the case because 11 U.S.C. § 541(a)(1) defines property of the estate as including, with minor exceptions, all of the property of the debtor as of the commencement of the case." *See also In re Brown*, 521 B.R. 205, 216 (Bankr. S.D. Tex. 2014). Under this statutory scheme, the "debtor's property must first come into the estate, subject to the property being exempted and the bankruptcy court's determining questions relating to claims of exemption, and is thus subject in that sense to administration by the bankruptcy court." *Ostroff*, 433 B.R. at 452. Therefore, the function of § 1334(e)(1) in context is to "divest[] any other court of the authority to take jurisdiction over the res being administered by the trustee for the benefit of unsecured creditors," and that res "includes the debtor's property as of the commencement of the case that becomes property of the estate on that date under 11 U.S.C. § 541(a)(1)." *Id.*

In other words, the function of § 1334(e)(1)—and its language concerning property "of the debtor as of the commencement of such case"— is to facilitate the bankruptcy estate's administration of the debtor's property, and not, as Porretto suggests, for the bankruptcy court to exercise jurisdiction over the debtor's property in perpetuity.[7] It reasonably follows that when a property is abandoned, "the estate ha[s] been fully administered

---

[7] Accordingly, we are not persuaded by Porretto's argument that the district court retained jurisdiction over the Porretto Beach property after abandonment because Porretto Beach became property "of the debtor." § 1334(e)(1) grants the district court jurisdiction over property "of the debtor *as of the commencement of such case*," i.e., property of the debtor that is subject to the bankruptcy estate's administration. (emphasis added); *cf. Ostroff*, 433 B.R. at 452–53 (discussing exempt property, and noting that "[o]nce such property is exempted from the estate, it is property of the debtor anew, and is no longer property being administered by the bankruptcy trustee as property of the debtor as of the commencement of the case" (internal quotation omitted)).

insofar as that property [is] concerned," and the district court's exclusive jurisdiction over that property pursuant to § 1334(e)(1) lapses. *See Sindram*, 2010 WL 434341, at *2.

Porretto correctly points out, however, that courts in some instances have invoked § 1334(e)(1) to exercise jurisdiction over abandoned property. For instance, in *In re Gunter*, 410 B.R. 178, 180 (Bankr. E.D.N.C. 2008), the U.S. Bankruptcy Court for the Eastern District of North Carolina addressed whether it had jurisdiction to rule on a motion for summary judgment in an adversarial proceeding involving a dispute between creditors regarding lien priority. The court held that although the property at issue had been abandoned, it was still "property of the debtor over which [the] court ha[d] jurisdiction" under § 1334(e)(1). *Id.* at 180–81.

Central to the court's reasoning was its conclusion that "an adversary proceeding to resolve a dispute between two competing lienholders involving property that is property of the debtor but is not property of the estate" is a "core proceeding" under 28 U.S.C. § 157(b)(2) that is subject to a bankruptcy court's jurisdiction. *Id.* at 181; *see* 28 U.S.C. § 157(b)(2)(K) (listing "determinations of the validity, extent, or priority of liens" as core proceedings). Furthermore, the court concluded that were one of the creditors to prevail in the adversarial proceeding, its competing creditor "would be the largest unsecured creditor of the estate, and its claim would certainly affect any distribution received by the other unsecured creditors." *Gunter*, 410 B.R. at 181. Therefore, the court also considered the case to be a "core proceeding" subject to bankruptcy court jurisdiction under "§ 157(b)(2)(A) (matters concerning the administration of the estate), § 157(b)(2)(B) (allowance or disallowance of claims against the estate), and § 157(b)(2)(O) (other proceedings affecting the adjustment of the debtor-creditor relationship)." *Id.*

No. 23-40035

The same bankruptcy court, citing *Gunter*, reached a similar conclusion in *In re Ormond*, No. 12-05489-8-SWH, 2015 WL 1000218, at *2–3 (Bankr. E.D.N.C. Mar. 3, 2015), a case concerning a bank's request for reimbursement of attorney's fees following a foreclosure sale of abandoned property. In exercising jurisdiction under § 1334(e)(1), the bankruptcy court noted that the outcome of the proceeding would have "a direct effect on the amount of proceeds . . . unsecured claimants will receive." *Id.* at *4.

Finally, in *In re Fong*, No. 01-00242, 2005 WL 3964429, at *1 (Bankr. D. Haw. Nov. 18, 2005), the U.S. Bankruptcy Court for the District of Hawaii determined that it had jurisdiction to "enter an order transferring a disputed tax lien and a judgment lien from property, some of which ha[d] been abandoned and some of which ha[d] not, to the proceeds of sale of the abandoned property." The court cited § 1334(e)(1) as a basis for exercising jurisdiction over the abandoned property. *Id.* at *3. However, the court *also* determined that the proceeding was "related to" a bankruptcy case and exercised jurisdiction under 28 U.S.C. § 1334(b), because "there [was] a lien that encumber[ed] both abandoned property and estate property," and thus "the treatment of the lien on the abandoned property will affect the administration of the estate." *Id.*

We do not find *Gunter*, *Ormond*, and *Fong* persuasive here. Given § 1334(e)(1)'s function and limited scope, we are not convinced that the courts in these cases correctly exercised jurisdiction pursuant to this provision. The court in each case found jurisdiction under § 1334(e)(1), in part, due to the proceeding's potential impact on distributions in a bankruptcy case, and it seems to us that it would have been more appropriate to exercise jurisdiction pursuant to 28 U.S.C. § 1334(b), which provides federal jurisdiction over civil proceedings that may affect the rights of a debtor or the administration of the bankruptcy estate. *See In re TXNB Internal Case*, 483 F.3d 292, 298 (5th Cir. 2007). In any event, even if *Gunter*,

17

*Ormond*, and *Fong* indicate that there may be limited circumstances in which a district court may exercise its jurisdiction under 28 U.S.C. § 1334(e)(1) to hear a claim pertaining to abandoned property—such as a dispute between competing creditors (*Gunter* and *Fong*), or a trustee's objection to a creditor's claim (*Ormond*)—Porretto has not effectively argued that the limited circumstances present in *Gunter*, *Ormond*, and *Fong* exist here.

The remaining cases cited by Porretto supporting jurisdiction under § 1334(e)(1) are clearly distinguishable in that they all involve enforcing the right of a debtor to exempt certain property from the estate under 11 U.S.C. § 522, which is not applicable here. *See* 5 Collier on Bankruptcy ¶ 554.02 ("Abandonment . . . should not be considered to divest the court of jurisdiction to enforce the rights of a debtor to claim an exemption under section 522."); *In re Ramos*, 498 B.R. 401, 402 (B.A.P. 1st Cir. 2013) ("The sole issue on appeal is whether the trustee's abandonment of the debtor's residence deprived the bankruptcy court of jurisdiction to determine the debtor's motion to avoid a judgment lien under 11 U.S.C. § 522(f)."); *In re Lafoon*, 278 B.R. 767, 771 (Bankr. E.D. Tenn. 2002) ("The abandonment by the Trustee pursuant to 11 U.S.C. Section 554(a) does not divest this court of jurisdiction to enforce the rights of the debtors as to their exemption in the property." (quoting *In re Bennett*, 13 B.R. 643, 645 (Bankr. W.D. Mich. 1981))).

Porretto has not presented a compelling reason for us to break from the prevailing consensus on § 1334(e)(1), which is that a district court's limited, exclusive jurisdiction under § 1334(e)(1) does not extend to claims related to property that has been abandoned by the bankruptcy estate. As briefly referenced above, we find that § 1334(b) provides the proper lens through which to analyze the exercise of bankruptcy jurisdiction over Porretto's claims, and we turn to that issue next.

No. 23-40035

**B.**

28 U.S.C. § 1334(b) grants federal courts "original but not exclusive jurisdiction of all civil proceedings . . . arising in or related to cases under title 11." This court has interpreted § 1334(b) as a broad jurisdiction-conferring provision. As we explained in *TXNB*, 483 F.3d at 298:

> We have read this jurisdictional grant broadly, stating that the test for whether a proceeding properly invokes federal "related to" jurisdiction is whether the outcome of the proceeding could conceivably affect the estate being administered in bankruptcy. Certainty is unnecessary; an action is "related to" bankruptcy if the outcome could alter, positively or negatively, the debtor's rights, liabilities, options, or freedom of action or could influence the administration of the bankrupt estate.

(internal citations omitted).

That said, while § 1334(b)'s reach is broad, it is not limitless. *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995). This court will not find jurisdiction under § 1334(b) when the claims at issue affect only the debtor, and not the bankruptcy estate. *See In re Wood*, 825 F.2d 90, 94 (5th Cir. 1987). Thus, to invoke jurisdiction under § 1334(b), Porretto must establish that her suit could have had a conceivable effect on the bankruptcy estate at the time she filed her complaint. *See Double Eagle Energy Servs., L.L.C. v. MarkWest Utica EMG, L.L.C.*, 936 F.3d 260, 263–64 (5th Cir. 2019) (holding that the "time-of-filing" rule applies to cases brought pursuant to § 1334(b)).

Here, we find that Porretto has not convincingly asserted that the present lawsuit could have affected her bankruptcy estate at the time of filing. Porretto notes that the Porretto Beach property has secured creditors, and that "damaging the property, taking the property, and/or inverse condemnation of the property are all claims that necessarily impact the secured creditor as her collateral is harmed." She also asserts that if she

19

receives damages in this case, "it is possible that the special counsel hired as an estate professional in the bankruptcy court [could] assert a claim to the proceeds." Defendants counter that Porretto Beach was not part of the bankruptcy estate at the time of this lawsuit's filing; thus, if creditors have secured interests in Porretto Beach, they will recover from either Porretto or the property, not the bankruptcy estate. And, any awards from a favorable judgment would not have accrued to the bankruptcy estate.

For two reasons, we find that Defendants have the better argument. First, Porretto's lawsuit pertains to the Porretto Beach property, and we have held that a "debtor's rights to [abandoned] property are treated as if no bankruptcy petition was filed." *Kane v. Nat'l Union Fire Ins.*, 535 F.3d 380, 385 (5th Cir. 2008) (quoting 5 Collier on Bankruptcy ¶ 554.02 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. 2008)). Accordingly, "[u]sually[] abandonment of property will end the court's jurisdiction to determine disputes concerning that property." 5 Collier on Bankruptcy ¶ 554.02; *see also* William L. Norton III, 3 Norton Bankruptcy Law and Practice § 74:2 (3d ed. 2024) ("The bankruptcy court loses subject matter jurisdiction over property on its abandonment, unless the property is claimed exempt by the debtor."); *In re Lyn*, 483 B.R. 440, 451 (Bankr. D. Del. 2012) (determining that the court lacked subject matter jurisdiction under § 1334(b) "with respect to all claims pertaining to" an abandoned property); *In re Torres*, No. 13-06530, 2015 WL 1598120, at *1 (Bankr. D.P.R. Apr. 7, 2015) (determining that the court lacked subject matter jurisdiction under § 1334(b) because the bankruptcy trustee had abandoned "the property that is the subject of [the] adversary proceeding").

Second, Porretto's claims all allege post-bankruptcy petition conduct. "Generally, post-petition claims are not dischargeable in bankruptcy and, therefore, do not affect the estate." *Wood*, 825 F.2d at 94; *see also In re*

No. 23-40035

*Rhinesmith*, 450 B.R. 630, 632 (Bankr. W.D. Tex. 2011) ("Unlike pre-petition claims, claims which accrue to the debtor post-petition generally will not adhere to the estate, and remain actionable by the debtor." (quoting *Stanley v. Cmty. Bank, N.A.*, No. 8:08-CV-925 GLS/RFT, 2009 WL 261333, at \*2 (N.D.N.Y. Feb. 4, 2009))).

Arguably the only claims alleged by Porretto that do not directly pertain to losses or damages to Porretto Beach are her claims of tortious interference, harassment, and retaliation, but Porretto has not alleged that the conduct underlying these claims occurred pre-petition. The remaining claims, which also allege post-petition conduct, directly pertain to the abandoned property, and we treat Porretto's rights to that property "as if no bankruptcy petition was filed." *See Kane*, 535 F.3d at 385 (internal quotation omitted).

At bottom, it is Porretto's burden to establish that jurisdiction exists, *Ramming*, 281 F.3d at 161, so we need not engage in endless speculation over hypothetical scenarios linking this lawsuit to the administration of the bankruptcy estate. Because Porretto has not clearly identified how her claims, which concern an abandoned property, could impact the bankruptcy estate, we find that the district court did not err in concluding that it could not exercise jurisdiction over Porretto's lawsuit pursuant to § 1334(b).

## V.

While Porretto's arguments for jurisdiction pursuant to 28 U.S.C. § 1334 are unavailing, her invocation of federal question jurisdiction under 28 U.S.C. § 1331 is straightforward. Porretto contends that the district court's dismissal due to her complaint's lack of a specific citation to 42 U.S.C. § 1983 contravenes the Supreme Court's precedent in *Johnson v. City of Shelby*, 574 U.S. 10 (2014). We agree.

No. 23-40035

In *Johnson*, the Supreme Court plainly held that plaintiffs pleading constitutional claims cannot have their complaint dismissed based on a failure to invoke § 1983; as long as they plead *factual* allegations sufficient to show that their claims have substantive plausibility, their complaint can survive a motion to dismiss. 574 U.S. at 12. In *Quinn v. Guerrero*, 863 F.3d 353, 358–59 (5th Cir. 2017), this court clarified that while a plaintiff does not need to specifically cite a federal provision such as § 1983 to establish federal question jurisdiction, the plaintiff's "federal question must appear on the face of his well-pleaded complaint." In other words, federal question jurisdiction exists where the plaintiff specifically lists a federal cause of action or makes a claim under federal law. *Id.* at 359.

Though Porretto failed to cite § 1983 (or 28 U.S.C. § 1331, for that matter), her complaint clearly raises constitutional claims. She repeatedly alleges that the flooding of her property, the Park Board's alleged taking of sand, and Defendants' alleged interference with her beach property's natural accretion levels constitute takings without just compensation in violation of the Fifth Amendment.[8] She also alleges that these takings occurred in violation of her Fourteenth Amendment due process rights. Because Porretto unambiguously pleaded constitutional claims in her complaint, her failure to

---

[8] Porretto's failure to cite 28 U.S.C. § 1331 is understandable when considering that she filed the operative complaint in bankruptcy court. If, on remand, Porretto's claims survive Defendants' motions to dismiss, an amended complaint could readily clarify the proper basis for the court's jurisdiction. *See Johnson*, 574 U.S. at 12 (noting that the plaintiffs, on remand, "should be accorded an opportunity to add to their complaint a citation to § 1983").

Furthermore, we note that we do not consider Porretto's failure to cite 28 U.S.C. § 1331 to be a fatal defect to her complaint. *See* Charles Alan Wright & Arthur R. Miller et al., 5 Federal Practice and Procedure § 1206 (4th ed. 2024) ("[I]f a party seeking to invoke federal jurisdiction asserts a substantial claim under a federal statute or common law, both the jurisdictional prerequisite and the pleading requirements of Rule 8(a)(1) are satisfied.").

invoke § 1983 should not have prevented the district court from exercising federal question jurisdiction. *See Johnson*, 574 U.S. at 10; *see also Devillier v. Texas*, 63 F.4th 416, 429 (5th Cir. 2023) (Oldham, J., dissenting from denial of rehearing en banc) ("[T]he absence of a cause of action is a merits problem, not a jurisdictional one.").

In response to Porretto's invocation of the rule enunciated in *Johnson v. City of Shelby*, the Galveston Defendants suggest that this is a case where "the basis of federal jurisdiction is intertwined with the plaintiff's federal cause of action," and that therefore "the court should assume jurisdiction over the case and decide the case on the merits." *Eubanks v. McCotter*, 802 F.2d 790, 792–93 (5th Cir. 1986). More specifically, the Galveston Defendants argue that because Porretto cannot meet the requirements for pleading a § 1983 municipal liability claim, the court was correct to conclude that there is no federal question jurisdiction.

Where factual findings regarding subject matter jurisdiction are intertwined with the merits, this court has applied the standard described in *Bell v. Hood*, 327 U.S. 678, 682–83 (1946), which provides that a federal claim "should not be dismissed for lack of subject matter jurisdiction unless the alleged claim is immaterial or is wholly insubstantial and frivolous." *See Clark v. Tarrant County*, 798 F.2d 736, 741–42 (5th Cir. 1986). This standard "is met only where the plaintiff's claim 'has no plausible foundation' or 'is clearly foreclosed by a prior Supreme Court decision.'" *Williamson v. Tucker*, 645 F.2d 404, 416 (5th Cir. 1981) (quoting *Bell v. Health-Mor, Inc.*, 549 F.2d 342, 344 (5th Cir. 1977)). To determine whether this standard applies, we look to "the *extent* to which the jurisdictional question is intertwined with the merits, considering such factors as whether the statutory source of jurisdiction differs from the source of the federal claim and whether judicial economy favors early resolution of the jurisdictional issue." *In re S. Recycling, L.L.C.*, 982 F.3d 374, 380 (5th Cir. 2020) (emphasis in original).

Defendants' argument that we should apply the "intertwined with the merits" standard has some support; this court has held that invoking federal question jurisdiction for a claim brought pursuant to § 1983 is a "classic example of a case in which the federal cause of action and federal jurisdiction are interdependent." *Eubanks*, 802 F.2d at 793. Furthermore, the U.S. District Court for the Southern District of Texas, in considering a recent takings claim against the GLO brought pursuant to § 1983, concluded that "factual issues determinative of jurisdiction are intertwined with or identical to factual issues determinative of the merits." *Sheffield v. Bush*, 604 F. Supp. 3d 586, 599–600 (S.D. Tex. 2022) (quoting *Worldwide Parking, Inc. v. New Orleans City*, 123 F. App'x 606, 608 (5th Cir. 2005)).

Even if the "intertwined with the merits" standard applies, we do not find that Porretto's claims are "immaterial and made solely for the purpose of obtaining jurisdiction or . . . wholly insubstantial and frivolous." *Bell*, 327 U.S. at 682–83. Porretto alleges that Defendants' activities resulted in flooding and erosion at her beach property, and it is well established that government-caused flooding and erosion may constitute a taking. *See, e.g.*, *United States v. Dickinson*, 331 U.S. 745, 750 (1947) ("When [the government] takes property by flooding, it takes the land which it permanently floods as well as that which inevitably washes away as a result of that flooding."); *Pumpelly v. Green Bay & Miss. Canal Co.*, 80 U.S. 166, 181 (1871) (determining that a taking occurs "where real estate is actually invaded by superinduced additions of water, earth, sand, or other material, or by having any artificial structure placed on it, so as to effectually destroy or impair its usefulness"); *Boling v. United States*, 220 F.3d 1365, 1372–73 (Fed. Cir. 2000) (finding that a taking may occur when a parcel is "substantially encroached by erosion"); *Applegate v. United States*, 35 Fed. Cl. 406, 415 (1996) ("Binding precedent supports a ruling, as a matter of law, that flooding and erosion on plaintiffs' properties caused by governmental

action above the [mean high-water mark] is a compensable taking."). And, even if the alleged flooding was temporary, that fact does not bar relief. *See Cedar Point Nursery v. Hassid*, 594 U.S. 139, 153 (2021) ("[W]e have held that a physical appropriation is a taking whether it is permanent or temporary.").

Furthermore, while we decline at this juncture to prejudge the merits of Porretto's § 1983 municipal liability claim, our recent decision in *St. Maron Properties, L.L.C. v. City of Houston*, 78 F.4th 754 (5th Cir. 2023), leads us to believe that Porretto's case, at the very least, clears the "wholly insubstantial and frivolous" threshold. In *St. Maron*, a group of property owners brought § 1983 claims under the Takings Clause, the Due Process Clause, and the Equal Protection Clause, alleging that the Mayor of Houston, the City Council, and the City Attorney used the property owners' empty lots as a dumping ground for construction materials, which resulted in flooding and subsequent damage to their properties. *Id.* at 757–58. This court determined that the plaintiffs had sufficiently pleaded a § 1983 municipal liability claim, noting that "even a single decision may constitute municipal policy in rare circumstances, when the official or entity possessing final policymaking authority for an action performed the specific act that forms the basis of the § 1983 claim." *Id.* at 760. Given that there are some key factual similarities between Porretto's claims and the *St. Maron* plaintiffs' claims—i.e., a municipality undertaking activities that result in unconstitutional takings without just compensation or due process—we find that the viability of Porretto's municipal liability claim is a nonfrivolous issue that deserves full consideration on remand. Therefore, we decline to affirm the dismissal of Porretto's claims for lack of federal question jurisdiction pursuant to the "intertwined with the merits" standard.

Though we find that the district court has federal question jurisdiction, Porretto still faces hurdles in overcoming the Galveston Defendants' motion to dismiss, including Defendants' invocation of

governmental immunity, as well as their assertion that Porretto's complaint should be dismissed for failure to state a claim under Rule 12(b)(6). The district court's supplemental jurisdiction over Porretto's state law claims is another unresolved issue. But we leave it to the district court to address these issues in the first instance. *See Montano v. Texas*, 867 F.3d 540, 546 (5th Cir. 2017) ("'As a court for review of errors,' we do 'not . . . decide facts or make legal conclusions in the first instance,' but 'review the actions of a trial court for claimed errors.'" (quoting *Browning v. Kramer*, 931 F.2d 340, 345 (5th Cir. 1991))). Accordingly, we VACATE the district court's dismissal of Porretto's claims against the Galveston Defendants, and we REMAND for the district court to consider alternative grounds for dismissal in the first instance.

## VI.

In addition to challenging the district court's dismissal of her claims, Porretto also challenges the district court's decision to deny her leave to amend her complaint. "Rule 15(a) [of the Federal Rules of Civil Procedure] requires a trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (internal quotation omitted). A district court's denial of leave to amend is reviewed for an abuse of discretion. *Peña v. City of Rio Grande City*, 879 F.3d 613, 618 n.5 (5th Cir. 2018).[9] "The district

---

[9] As a threshold matter, Porretto claims that the proper standard of review is *de novo*, because the district court referenced futility when denying Porretto an opportunity to further amend her pleadings. *See Peña*, 879 F.3d at 618 ("[W]here the district court's denial of leave to amend was based solely on futility, this court applies a de novo standard of review 'identical, in practice, to the standard used for reviewing a dismissal under Rule 12(b)(6).'" (quoting *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016))). There are two issues with Porretto's contention. First, our standard of review is *de novo* when the district court denies leave to amend *solely* based on futility, and the district court here also referenced Porretto's repeated failures to correct her pleadings' deficiencies. And

No. 23-40035

court properly exercises its discretion under Rule 15(a)(2) when it denies leave to amend for a substantial reason, such as undue delay, repeated failures to cure deficiencies, undue prejudice, or futility." *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 367 (5th Cir. 2014).

Porretto never filed a motion requesting leave to amend her operative third amended complaint; instead, in her oppositions to Defendants' motions to dismiss, Porretto asked to be "afforded an opportunity to amend the Complaint if the Court deems additional factual allegations are necessary." We cannot fault the district court for refusing to grant Porretto leave to amend under these circumstances, since a "bare bones" request to amend pleadings "remains futile when it 'fail[s] to apprise the district court of the facts that [the plaintiff] would plead in an amended complaint.'" *Edionwe v. Bailey*, 860 F.3d 287, 295 (5th Cir. 2017) (quoting *Gentilello v. Rege*, 627 F.3d 540, 546 (5th Cir. 2010)). Accordingly, we AFFIRM the district court's decision to deny leave to amend.[10] But, as noted above, Porretto may request leave to amend her complaint on remand if she so chooses.

---

second, when the grounds for denying leave to amend is futility, this court reviews a *proposed amended complaint de novo* under a Rule 12(b)(6) standard, and there was no proposed amended complaint here. *See id.* ("Under that [Rule 12(b)(6)] standard, we must evaluate the sufficiency of the proposed complaint and decide which, if any, of [the plaintiff's] claims survive the pleadings."); *Ariyan, Inc. v. Sewerage & Water Bd. of New Orleans*, 29 F.4th 226, 229 (5th Cir. 2022) ("If the complaint, as amended, would be subject to dismissal, then amendment is futile and the district court was within its discretion to deny leave to amend."). Therefore, we apply the abuse of discretion standard of review.

[10] We briefly address Porretto's argument that the district court denied her leave to amend in violation of Rule 6 of the Galveston Division Rules of Practice ("Local Rule 6"), which provides that the court will *sua sponte* grant a plaintiff leave to amend if defendants do not meet and confer with the plaintiff before filing a motion to dismiss. We recently invalidated Local Rule 6, holding that it "impermissibly short circuits Federal Rule of Civil Procedure 15's liberal amendment scheme and our associated caselaw." *See Ass'n of Am. Physicians*, 103 F.4th at 388. While it could be argued that the portion of Local Rule

No. 23-40035

## VII.

Finally, we address the district court's denial of Porretto's motion seeking the recusal of U.S. District Judge Jeffrey V. Brown. 28 U.S.C. § 455(a) provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." We review the denial of a motion for recusal for an abuse of discretion. *Matassarin v. Lynch*, 174 F.3d 549, 571 (5th Cir. 1999).

In applying the recusal statute, we consider "whether a reasonable and objective person, knowing all of the facts, would harbor doubts concerning the judge's impartiality." *United States v. Jordan*, 49 F.3d 152, 155 (5th Cir. 1995). This objective standard considers the perspective of the "well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person." *Andrade v. Chojnacki*, 338 F.3d 448, 455 (5th Cir. 2003) (quoting *Jordan*, 49 F.3d at 156). "[E]ach § 455(a) case is extremely fact intensive and fact bound, and must be judged on its unique facts and circumstances more than by comparison to situations considered in prior jurisprudence." *Jordan*, 49 F.3d at 157.

---

6 invoked by Porretto was not invalidated, we need not address this issue, because we are not convinced that this portion is applicable here. When the district court inherited this case from the bankruptcy court, Porretto had already filed three amended complaints, and Defendants had filed renewed motions to dismiss responding to Porretto's second amended complaint. Under these unique circumstances, the district court decided to delay ruling on the motions to dismiss, grant Porretto's request to make her third amended complaint the operative complaint in the matter, and provide Defendants the opportunity to renew their motions to dismiss within thirty days. Because the district court inherited a case that already had several amended complaints and live motions to dismiss, it was not unreasonable, nor an abuse of discretion, for the court to conclude that Local Rule 6 would not apply to these particular circumstances. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1488 (5th Cir. 1990) ("We recognize that district courts have considerable latitude in applying their own rules.").

28

Porretto raises several grounds for concluding that Judge Brown should have recused himself. First, and most prominently, Porretto notes that Judge Brown had a mechanic's lien filed against his home in favor of Galveston Councilmember John Listowski's company in the amount of $72,683.99. Because the mechanic's lien is a "substantial financial obligation," Porretto speculates that Listowski and Judge Brown may have "a close relationship" because of "the nature of the work given a contractor is in the home and would see the personal details of the judge's life." Porretto also notes that Listowski regularly votes against Porretto's interests, and she opines that it is inappropriate for Judge Brown to conduct business with a local elected official who could feasibly appear before the court. According to Porretto, the appearance of impropriety is heightened here because Judge Brown lives next door to Galveston's mayor.

Porretto further takes issue with the tone of the court's order denying her motion for a new trial and motion for recusal. She notes that the court filed this order twice; the first order noted that "plaintiff's motion for new trial . . . and—*filed just yesterday—her motion* to recuse the undersigned" were before the court, and the second order omitted the language indicated above in italics. (emphasis added). Porretto claims that this first filing, as well as the court's order granting Defendants' motions to dismiss, contains an inappropriate "personal tone" that evinces bias against Porretto. Porretto further contends that Judge Brown's bias is reflected by the fact that the district court's order granting Defendants' motions to dismiss in some instances adopts language from Defendants' filings.

Porretto additionally notes that Defendants' counsel collectively donated over $9,000 to Judge Brown's judicial campaigns when he served on the state bench. She claims that the contributions' "relative size . . . is significantly more than average donors and more consistent than other donors." Finally, Porretto highlights that Judge Brown serves on the

Houston Law Review Board of Directors with attorneys who serve as Defendants' counsel.

Regarding the mechanic's lien that connected Judge Brown and Galveston Councilmember John Listowski professionally, courts have regularly held that casual, professional relationships—even those between a judge and a party to a case—do not warrant recusal. *See, e.g.*, *McWhorter v. City of Birmingham*, 906 F.2d 674, 679 (11th Cir. 1990) (holding, in a lawsuit against the City of Birmingham, that the judge's friendship and business relationship with the Mayor of Birmingham did not "create the appearance of impropriety"); *Jenson v. Fisher*, 99 F.3d 1149, 1996 WL 606505 at *2 (10th Cir. 1996) ("Professional associations alone are insufficient to establish judicial bias."); *United States v. Olis*, 571 F. Supp. 2d 777, 786 (S.D. Tex. 2008) ("Judges are not required to recuse . . . when facts stated in a supporting affidavit show that they have a casual, professional relationship with an attorney, victim, witness, or litigant appearing before them in court.").

Porretto's argument that the mechanic's lien creates the appearance of impropriety is unpersuasive. The professional relationship between Judge Brown and Councilmember Listowski does not alone establish a "personal relationship of such magnitude that the judge cannot be impartial." *Olis*, 571 F. Supp. 2d at 786. Furthermore, it is unclear what role, if any, Councilmember Listowski will play in this litigation. As the Eleventh Circuit explained in *McWhorter*, personal ties to a municipal leader—who is not a party or witness in the case—are insufficient to create the appearance of impropriety in a § 1983 suit against the municipality. 906 F.2d at 679.

Porretto's other allegations regarding Judge Brown's relationships are similarly uncompelling. The fact that Judge Brown lives next door to the Mayor of Galveston is hardly grounds for recusal, especially considering that

the Mayor's involvement in this lawsuit is unclear. Furthermore, Judge Brown's role on the University of Houston Law Review's Board of Directors is an ordinary professional association that does not create the appearance of impropriety.

Turning to the campaign contributions provided to Judge Brown, Defendants note that "Texas courts have repeatedly rejected the notion that a judge's acceptance of campaign contributions from lawyers creates bias necessitating recusal, or even an appearance of impropriety." *Aguilar v. Anderson*, 855 S.W.2d 799, 802 (Tex. App.—El Paso 1993, writ denied) (collecting cases); *see also Rocha v. Ahmad*, 662 S.W.2d 77, 78 (Tex. App.—El Paso 1993, writ denied) ("If a judge cannot sit on a case in which a contributing lawyer is involved as counsel, judges who have been elected would have to recuse themselves in perhaps a majority of the cases filed in their courts."). In any event, Judge Brown now serves on the federal bench, which largely ameliorates any possible concern regarding "[t]he temporal relationship between the campaign contributions, the [judge's] election, and the pendency of the case." *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 886 (2009) (reviewing the due process factors that courts look to when addressing the potential bias of a judge who received campaign contributions from a party).

Porretto's arguments related to the district court's "personal tone" also are meritless. We fail to see how a minor language edit in the district court's order evinces bias against Porretto. And while the district court may have adopted some of Defendants' language in drafting its order granting Defendants' motions to dismiss, the language of the order does not appear to "have a personal tone against" Porretto.

Finally, while Porretto claims that she filed a motion for recusal shortly after learning of the mechanic's lien, the timing of Porretto's motion

gives us pause. "The general rule on timeliness requires that 'one seeking disqualification must do so at the earliest moment after knowledge of the facts demonstrating the basis for such disqualification.'" *United States v. Sanford*, 157 F.3d 987, 988 (5th Cir. 1998) (quoting *Travelers Ins. v. Liljeberg Enters., Inc.*, 38 F.3d 1404, 1410 (5th Cir. 1994)). "We have rejected recusal challenges on appeal when the challenger waited to see if he liked an outcome before springing the recusal issue." *Id.* at 989. While not dispositive, the fact that Porretto raised this issue after receiving an adverse judgment raises concerns regarding whether her motion was brought in good faith.

In sum, Porretto's brief highlights Judge Brown's seemingly innocuous professional connections, which do not create the appearance of impropriety. Several of these connections are with nonparty individuals whose relation to this litigation is unclear. And the campaign contributions are of limited concern, since Judge Brown now sits on the federal bench. We therefore AFFIRM the district court's denial of Porretto's motion for recusal, and we DENY Porretto's request for this case to be reassigned to a judge in the Houston Division on remand. *See Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 581 (5th Cir. 2005) (noting that reassigning a case to a different judge on remand is an "extraordinary power that should be rarely exercised" (internal quotation omitted)).

## VIII.

For the foregoing reasons, we AFFIRM the district court's denial of Porretto's claims against the GLO and its Commissioner without prejudice. We VACATE the district court's dismissal of Porretto's claims against the Park Board and the City of Galveston, and we REMAND with instructions for the district court to consider these Defendants-Appellees' alternative arguments for dismissal, as well as the issue of supplemental jurisdiction over Porretto's state law claims. We also AFFIRM the district court's decision

No. 23-40035

to deny Porretto leave to amend her complaint, though we note that Porretto may file a substantive motion for leave to amend on remand if she so chooses. Finally, we AFFIRM the district court's denial of Porretto's motion for recusal, and we DENY Porretto's request for her case to be reassigned to a judge in the Houston Division on remand.