United States Court of Appeals
Fifth Circuit

**F I L E D**

June 29, 2005

Charles R. Fulbruge III
Clerk

In the
# United States Court of Appeals
## for the Fifth Circuit

———————

m 04-10251

———————

GENERAL ELECTRIC CAPITAL CORPORATION,
A DELAWARE CORPORATION,

Plaintiff-Appellant,

VERSUS

H. WAYNE POSEY, ET AL.,

Defendants,

H. WAYNE POSEY; CHARLES W. MCQUEARY; ROBERT D. SMITH; DEBORAH A. JOHNSON;
DALE K. EDWARDS; ROBERT M. SONTHEIMER; GREGORY A. WAGONER, M.D.;
THOMAS E. CHANEY, M.D.; JAMES F. HERD, M.D.; SANJEEV K. MEHRA;
RICHARD E. RAGSDALE,

Defendants-Appellees,

CHARLES J. BUYSSE, M.D.; JACK W. MCCASLIN,

Defendants-
Third Party Plaintiffs-
Appellees,

VERSUS

ARTHUR ANDERSEN LLP,

Third Party Defendant-
Appellee.

Appeal from the United States District Court
for the Northern District of Texas

Before, SMITH, DENNIS, and PRADO,
  Circuit Judges.

JERRY E. SMITH, Circuit Judge:

General Electric Capital Corporation ("GECC") appeals the dismissal of its negligent misrepresentation claim against several former directors and officers of Promedco Management Company ("Promedco"). Because GECC's complaint pleads sufficient allegations to state a claim upon which relief can be granted, we reverse and remand.

I.

GECC's original complaint alleged that in June 2000 it was induced to lend Promedco $20 million. According to GECC, in deciding to enter into the credit agreement, it relied on Promedco's representations about its financial condition. GECC further contends that many of these representations were false and/or misleading and that as a result it sustained a loss of over $12 million.

A.

Promedco was a medical services company that managed health care practices in non-urban markets. Essentially, Promedco would approach an existing medical practice, acquire its operating assets (other than real estate), and employ its personnel (other than the physicians). Promedco would then manage the business aspects of the practices and provide administrative services such as facilities management, the acquisition of malpractice insurance, and accounting services.

In February 1999, GECC was approached and requested to extend credit to Promedco. Before eventually agreeing to make a $20 million loan, GECC reviewed financial reports and other documents supplied by Promedco management. These documents, *inter alia*, represented Promedco's 1999 earnings before interest, taxes, depreciation, and amortization ("EBITDA") to be $44.6 million, when its financial condition was much more precarious.

By the time GECC sued, it had been revealed by independent auditing that Promedco's true 1999 EBITDA were much lower (according to GECC's complaint, as low as $16.2 million). GECC alleges that this overstatement was the result of improper internal accounting with respect to several transactions and that

the source of the [] financial misstatements was the improper treatment given by Promedco, subject to the oversight and control of the Officers and Directors, to various of its internal transactions. This improper treatment formed the basis of Promedco's audited 1999 financial statements, its 1999 10K (which was approved by the Officers and Directors), and other financial materials provided to

and relied upon by GECC in its decision to [lend Promedco the $20 million].

Less than a year after the loan was made, Promedco filed for Chapter 11 bankruptcy protection, as a consequence of which GECC recovered only some $8 million of the $20 loan.

GECC sued (1) H. Wayne Posey, CEO; and Robert Smith, CFO; (2) Promedco's outside directorsSSCharles J. Buysse, Jr., M.D., E. Thomas Chaney, James F. Herd, Jack W. McCaslin, and Richard E. Ragsdale; and (3) other Promedco executivesSSDale Edwards, Senior Vice President of Development; Charles W. McQueary, Senior Vice President of Operations; Robert M. Sontheimer, Senior Vice President for Managed Care; Gregory M. Wagoner, M.D., Senior Vice President for Medical Affairs; and Deborah Johnson, Senior Vice President of Administration and Secretary to the Board of Directors (collectively, the "non-accounting defendants"[1]). GECC attached to its complaint Promedco's 1999 Form 10-K and its attachment, the "Report of Independent Public Accountants," prepared by Arthur Andersen LLP ("Arthur Andersen"). The report states that Arthur Andersen audited Promedco's 1998 and 1999 financial statements in accordance with generally accepted accounting standards.

B.

Defendants filed motions to dismiss under Federal Rules of Civil Procedure 9(b) and 12-(b)(6), arguing that GECC's complaint failed to allege fraud with the requisite particularity, and in any event, failed to state a claim upon which relief could be granted. *See* FED. R. CIV. P. 9(b), 12(b)(6). The district court properly dispensed with the rule 9(b) argument, concluding that GECC had not alleged any fraud claims and thus was not subject to the heightened pleading requirements of rule 9(b).[2]

On the rule 12(b)(6) motion, however, the court held that GECC had failed to state a claim for negligent misrepresentation. Specifically, the court found that GECC's pleadings (*i.e.,* the attachment of the Form 10-K) contradicted its allegation that the defendants had "failed to exercise reasonable care in obtaining and communicating the information concerning Promedco's financial condition." Under article 2.42(c) of the Texas Business Corporation Act, officers and directors are entitled to rely in good faith on the reports of public accountants. *See* TEX. BUS. CORP. ACT art. 2.42(c).[3] Consequently, the

---

[1] This moniker, used in the order denying GECC's rule 59(e) motion, refers to defendants Edwards, McQueary, Sontheimer, Wagoner, and Johnson. Presumably this label is meant to imply that these defendants, all officers of Promedco (but not the CEO or CFO), were not involved in the company's accounting practices. For the sake of consistency, we adopt the same taxonomy, yet we do not take a position on whether the denomination accurately reflects the defendants' activities.

[2] *See* 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 9.03[1][d], at 9-21 (3d ed. 2005).

[3] Article 2.42(c) provides,

In the discharge of any duty imposed or power conferred upon an officer, of a corporation the officer may in good faith and ordinary care rely on information, opinions, reports, or statements, including financial statements and other financial data, concerning the corporation or another person, that were prepared or presented by:

district court concluded that the reliance on Arthur Andersen's approval of Promedco's accounting methods directly contradicted GECC's allegation that the directors and officers had failed to exercise reasonable care.

Additionally, the court reasoned that although allegations that the directors and officers should not have relied on the Arthur Andersen report (*e.g.,* an allegation that they knew the information provided to Arthur Andersen was false) would have been sufficient to sustain a cause of action, GECC made no such allegations. As a matter of law, therefore, the court concluded that the defendants could not have acted negligently in vouching for the accuracy of the financial statements provided to GECC. The court dismissed GECC's claim with prejudice and entered a final judgment.

In response, GECC filed motions to vacate the judgment and to amend, *see* FED. R. CIV. P. 59(e), 15(a), attaching a proposed amended

---

(1) one or more other officers or employees of the corporation including members of the board of directors; or

(2) legal counsel, public accountants, investment bankers, or other persons as to matters the officer reasonably believes are within the person's professional or expert competence.

An officer is not relying in good faith within the meaning of this section if the officer has knowledge concerning the matter in question that makes reliance otherwise permitted by this subsection unwarranted.

TEX. BUS. CORP. ACT art. 2.42(c). Section 2.41(c), furthermore, provides substantially the same protection for directors.

complaint that it claimed would remedy the pleading defects identified by the district court. The main difference between the original and proposed amended complaints is the inclusion of allegations that the misrepresentations occurred in both audited and unaudited financial information. Specifically, the amended complaint alleges that GECC relied on erroneous unaudited documents including an offering memorandum, some documents attached to the Form 10-K, Promedco's Form 10Q for the first quarter of 2000, and a certificate of compliance. Additionally, GECC alleges that it relied on a live presentation made by Posey, Smith, Edwards, and Sontheimer.

The district court again held that GECC had failed to state a claim. In a sparsely-worded opinion, the court concluded that GECC had failed to allege any facts in support of the notion that the defendants did not exercise reasonable care. The court also noted that the complaint failed to allege sufficient facts to sustain other elements of a claim for negligent misrepresentationSS*to-wit*, "Plaintiff has failed to allege any facts tending to demonstrate that the director defendants had a pecuniary interest in the financing transaction at issue, nor has Plaintiff alleged any facts tending to demonstrate that the non-accounting defendants were responsible for the alleged misrepresentations."

## II.

### A.

We review a dismissal under rule 12(b)(6) *de novo*. *See Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough*, 354 F.3d 348, 351 (5th Cir. 2003). Consequently, we employ the same standard as that used by the district court: A claim will not be dismissed unless the plaintiff cannot prove any set of facts in

support of his claim that would entitle him to relief. *Id.*

## B.

The district court predicated its initial dismissal of GECC's claim on a finding that GECC's complaint contradicted its allegation that the defendants acted without reasonable care. On appeal, however, defendants argue that GECC failed to allege sufficient facts for *any* of the required elements of a negligent misrepresentation claim.

Under Texas law, a claim for negligent misrepresentation consists of four elements:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Clardy Mfg. Co. v. Marine Midland Bus. Loans, Inc.*, 88 F.3d 347, 357 (5th Cir. 1996). Although the three sets of defendants (the CEO and CFO, the outside directors, and the non-accounting defendants) take somewhat differing approaches on appeal, all three contend that GECC has generally failed sufficiently to plead these required elements.

Specifically, defendants argue that the complaint contains mere conclusional allegations, or "legal conclusions stated as factual conclusions." For example, defendants point to GECC's allegations with respect to the first element of its claim. That element requires that the representation be made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest. GECC's complaint states that the supposed misrepresentations were made "in connection with a transaction . . . in which the Officers and Directors had a pecuniary interest." Similarly, as to the reasonable care element, GECC alleges that the defendants "failed to exercise reasonable care in obtaining the information concerning Promedco's financial condition." In the eyes of the defendants, these allegations are too conclusional to survive a rule 12(b)(6) motion.[4]

Although the allegations are devoid of much factual particularity, they are patently sufficient to state a claim, in terms of the requisite specificity. GECC's complaint easily meets the relaxed pleading requirements of Rule 8(a).

According to rule 84 of the Federal Rules of Civil Procedure, "[t]he forms contained in the Appendix of Forms are sufficient under the rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate." FED. R. CIV. P. 84. A glance at Form 9 confirms the low bar that rule 8(a)'s notice pleading standard sets out. In its example of a complaint for negligence, Form 9 merely contains the simple statement, "[D]efendant negligently drove a motor vehicle against plaintiff . . . ." If such an un-

---

[4] *But see* 2 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 8.04[2], at 8-24.3 (3d ed. 2005) ("Pleading conclusory allegations of fact or law is permitted, provided the averments are 'short and plain' and give fair notice to the defending parties of the claim and the grounds alleged in support.").

5

detailed allegation will suffice, so must GECC's. The example in Form 9 does not even parse the negligence allegation into separate elementsSS *e.g.,* the allegation could say, "Defendant owed a duty of reasonable care and breached that duty by not exercising reasonable care in the manner in which he operated his vehicle."[5]

Rule 8(a)(2) merely requires that a plaintiff recite a "short and plain statement of the claim showing that the pleader is entitled to relief. FED. R. CIV. P. 8(a)(2).

> Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Other than in the situations expressly enumerated in rule 9(b), *e.g.,* allegations of actual fraud, plaintiffs must satisfy only the minimal requirements of rule 8(a). *See* FED. R. CIV. 8(a)(2), 9(b).[6]

The juxtaposition of the two pleading standards contained in rules 8 and 9 is elucidating. At oral argument, counsel for the non-accounting defendants challenged whether GECC had adequately alleged the involvement of those defendants in providing any allegedly misleading information. Confronting the oral presentation to GECC, at which the non-accounting defendants were allegedly present, counsel conceded that his clients' presence was pleaded, but "they never tell us what was saidSSwhat was said that was falseSSor even any kind of detail for us to be able to discern what facts are being alleged."

This prayer for further particularity begs the question: What more particularity would the defendants deem required to comply with the rule 9(b) requirement of pleading with particularity? Surely, requiring plaintiffs to plead the particular allegedly false statements made at a specific meeting is out of keeping with the generally lenient standards of our notice pleading regime.[7]

Here, although GECC's complaint contains minimal factual particularity, its allegations are at least as detailed as those in Form 9. As noted above, GECC points out the relevant documents in which, and presentations at

---

[5] Indeed, parsing the allegations into elements has never been required. *See* 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 8.04[1], at 8-24 to 8-24.1 (3d ed. 2005).

[6] *See also id.* § 8.02[1], at 8-8 ("[T]he general pleading principles of Rule 8 continue to apply to every other aspect of pleadings not specifically covered by special pleading requirements.). Indeed, the mere fact that allegations can be characterized as "conclusional" will not, alone, suffice to make them insufficient. "[T]he fact that a complaint is 'conclusory' is at automatically fatal." *Id.*

§ 8.04[1], at 8-24. Instead, "the test is whether the complaint 'outline[s] or adumbrate[s]' a violation of the statute, [common law theory] of recovery or constitutional provision on which the plaintiff relies . . . and connects the violation to the named defendants." *Id.* (quoting *Brownlee v. Conine*, 957 F.2d 353, 354 (7th Cir. 1992)) (brackets and ellipses in original).

[7] Indeed, under rule 9(b), even for allegations of fraud, "not every alleged misrepresentation need []appear in the pleadings" *Id.* § 9.03[1][a], at 9-17.

which, it believes misrepresentations were made; alleges that defendants were responsible for or authorized them, and asserts that in doing so they did not exercise reasonable care. Under the lenient standard of notice pleading, such a "short and plain statement of the claim" is sufficient. *See* FED. R. CIV. P. 8(a).

## C.

The initial dismissal of GECC's claims, as discussed above, was based on the Texas Business Corporation Act, which entitles officers and directors to rely in good faith on the reports of accountants. *See* TEX. BUS. CORP. ACT arts. 2.41(c), 2.42(c). According to the district court, in light of the statute, "It is hard to envision that officers and directors might have exercised greater care than ensuring that the financial statements used to represent their company's financial conditions and the underlying accounting principles upon which they were based have been approved by independent accounting experts."

On appeal, GECC contends that the protection afforded by the Texas statute must be pleaded as an affirmative defense and is not an appropriate ground on which to dismiss a claim on a rule 12(b)(6) motion. In support of this argument, GECC points to analogous provisions contained in federal securities laws and the cases applying them.

For instance, in *Griffin v. Paine Webber, Inc.*, 84 F. Supp. 2d 508, 512-13 (S.D.N.Y. 2000), investors brought a claim under § 12 of the Securities Act of 1933 alleging false registration and prospectus claims. *See* 15 U.S.C. § 771(a)(2). Section 12, however, also contains an exception for those who submitted a false registration or prospectus because they did not or could not know of the falsity or omission despite the exercise of reasonable care. The court concluded that the plaintiff need not allege that the defendant fell outside of this exception, noting that the plaintiff is not required to "plead statements in anticipation of affirmative defenses." *Id.* at 513.

GECC also points to *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 258 F. Supp. 2d 576, 640 (S.D. Tex. 2003). There, outside directors of Enron claimed, in their motion to dismiss, that their reliance on Arthur Andersen's audit opinions insulated them from liability under § 11 of the Securities Act of 1933, 15 U.S.C. 577k. The court, however, concluded that the director's reliance, and the good faith thereof, were fact-specific determinations that could not be resolved on a motion to dismiss. *Id.*

In response, the non-accounting defendants point to an analogous Delaware statute. In that state, as in Texas, directors are entitled to rely in good faith on the opinions rendered within the realm of expertise of the person giving the advice. Construing this Delaware statute in *Brehm v. Eisner*, 746 A.2d 244, 261 (Del. 2000), the court indicated that the pleading burden is on the plaintiff to allege such facts as would make reliance on the expert opinion unreasonable. After holding that the plaintiffs must rebut the presumption of good faith reliance, the court noted, "That is not to say, however, that a rebuttal of the presumption of proper reliance on the expert under Section 141(e) cannot be pleaded in a properly framed complaint setting forth particularized facts creating reason to believe that the Old Board's conduct was grossly negligent."

The instant defendants cannot cloak themselves in the protection of the Texas statute at this early stage of the proceedings. Article

2.42(c) affords protection for the reliance on the opinions of public accountants where that reliance is "*in good faith* and ordinary care." TEX. BUS. CORP. ACT art. 2.42(c). Perhaps GECC's pleadings (specifically, the attachments thereto)[8] negate any allegation that the defendants did not act with reasonable care. Our inquiry, however, does not end there. For the protection of the Texas statute to attach, the reliance on an accountant's opinion must be in good faith.

The attachment of the Form 10K to GECC's complaint does nothing to demonstrate the defendants' good faith. Although the *Brehm* court concluded that a Delaware statute conferred a presumption of good faith, no such presumption is apparent on the face of the Texas statute, and we decline to devise one by judicial fiat. A showing that the reliance was taken in good faith must be made by defendants in support of an affirmative defense based on the statute. If they are able to make such an uncontroverted showing after GECC has had a chance to conduct discovery, summary judgment will be appropriate.[9] At this early stage, however, termination of GECC's suit is premature.

The district court's initial dismissal of GECC's claim, though well intentioned, was in error. The parties further dispute whether GECC should have been allowed to amend its complaint. In light of our decision that it was a mistake to dismiss the original complaint, we need not reach that question.

The judgment is REVERSED, and this matter is REMANDED for further proceedings.

---

[8] Documents attached to a complaint are considered part of the plaintiff's pleadings. *See* FED. R. CIV. P. 10(c); *Centers v. Centennial Mortgage, Inc.*, 398 F.3d 930, 933 (7th Cir. 2005) (quoting 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1327, at 766 (1990) ("[A] plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment.").

[9] *See* 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 8.02[2], at 8-8.1 to 8-9 (3d ed. 2005).