# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 13, 2025

Lyle W. Cayce
Clerk

No. 24-10186

———————

ALEX PEYKOFF; SATISFIED LIFE FOUNDATION, INCORPORATED,

*Plaintiffs—Appellants*,

*versus*

CHARRISSA CAWLEY; CBCG, L.L.C., *doing business as* GAME
CHANGER PUBLISHING,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:23-CV-404

———————————————————————

Before SMITH, HIGGINSON, and DOUGLAS, *Circuit Judges*.

PER CURIAM:[*]

After an event jointly hosted by the parties resulted in losses of over
$200,000, Plaintiffs sued Defendants, asserting various state-law claims to
relief. On Defendants' motion, the district court dismissed Plaintiffs'
amended complaint with prejudice for failure to state a claim under Federal
Rule of Civil Procedure 12(b)(6). We AFFIRM.

———————————————

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 24-10186

## I.

Alex Peykoff hired Game Changer Publishing ("GCP") to publish and promote his book, *Get Your Satisfaction: A Short Guide to a Happier, More Satisfied Life*. Charrissa Cawley, GCP's CEO, was Peykoff's primary point of contact before and after the book was published.

While discussing the publishing and promotion of Peykoff's book, Peykoff and his company, the Satisfied Life Foundation ("SLF"), (collectively, "Plaintiffs") allege that they agreed to partner with Cawley and GCP (collectively, "Defendants") to host a multi-day entrepreneurial event called the Satisfied Life Mastermind & Movement ("Satisfied Life") in Punta Mita, Mexico. The purpose of the event was to further promote Peykoff's book and, more generally, SLF and the Satisfied Life brand. According to Plaintiffs, they agreed to host the Satisfied Life event based on representations by Defendants that they had hosted such events successfully for the past twenty-two years; Peykoff would recover any financial investment in the event; and the event would yield at least $200,000 of profit, which, along with any losses, would be shared. Also based on these representations, Plaintiffs allege that Peykoff supported the event with funding, client contacts, and his business reputation. Defendants provided clients to attend the event.

Unfortunately, the Satisfied Life event did not go as planned. It resulted in losses of approximately $216,000, which Plaintiffs assert Peykoff bore alone. After the event, Cawley sent statements to SLF's current and potential clients indicating that Plaintiffs were stepping aside from Satisfied Life and could no longer service their needs. At the same time, Cawley allegedly represented that she and GCP would continue serving those clients with future events and trainings under a new name, "The One Mastermind." Defendants further changed Satisfied Life branding on social media

2

platforms.  According to Plaintiffs, neither Peykoff nor SLF authorized Cawley to advise clients that they no longer wished to be part of Satisfied Life.  Plaintiffs further contend that the social media changes were made without their consent.  Cawley's representations to clients and social media changes allegedly drove all business from Plaintiffs to Defendants.

Following the failure of the Satisfied Life event and the unauthorized communications to SLF clients, Peykoff filed a complaint against Defendants in the United States District Court for the Northern District of Texas, invoking diversity jurisdiction.  The complaint asserted the following state-law claims: (1) breach of partnership agreement; (2) breach of fiduciary duty; (3) tortious interference with business relationships; (4) business disparagement; and (5) negligent misrepresentation.

Defendants filed a motion seeking dismissal of the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and a court order requiring Peykoff to "add clarifying language."  The motion further requested joinder of SLF, arguing that Cawley was hired by SLF, not Peykoff.  A sworn declaration by Cawley and accompanying exhibits were attached to the motion.

Peykoff filed an opposition to the motion to dismiss with an attached declaration.  That same day, he also filed an amended complaint that named SLF as a plaintiff but made no substantive changes to the original complaint.

The district court granted Defendants' motion to dismiss under Rule 12(b)(6).[1]  The court explained that it proceeded to rule on the motion

---

[1] The district court denied as moot Defendants' request for a more definite statement based on the amended complaint, which named SLF as a plaintiff.  Presumably for this same reason, the district court did not explicitly address the request to dismiss for lack of jurisdiction under Rule 12(b)(1), as that request was based on Peykoff's alleged lack of standing to pursue claims that belonged to SLF.

notwithstanding the filing of the amended complaint because the only change apparent in the amended complaint was that SLF was named as a party, and because the subsequently filed opposition and reply accounted for the amended complaint.

In granting the motion to dismiss, the district court determined that Plaintiffs' allegations of partnership formation were "threadbare recitals" of the relevant factors. This deficiency, the court found, was also fatal to Plaintiffs' breach of fiduciary duty claim that hinged on the existence of a fiduciary duty stemming from the partnership relationship. The district court dismissed the remaining claims for tortious interference with business relationships, business disparagement, and negligent misrepresentation, because the amended complaint lacked sufficient allegations as to required elements of each of those claims. Common to each claim's shortfall was the failure to allege facts explaining how Cawley's statements to Plaintiffs or their clients were false.

Although Plaintiffs requested leave to amend in their response to the motion to dismiss, the district court's order also dismissed all claims with prejudice. This appeal followed.

## II.

We review an order granting a Rule 12(b)(6) motion to dismiss for failure to state a claim de novo. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). We "accept all well-pleaded facts

as true and view those facts in the light most favorable to the plaintiffs." *McLin v. Twenty-First Jud. Dist.*, 79 F.4th 411, 415 (5th Cir. 2023). "[D]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (internal quotation marks and citation omitted). Our analysis is generally confined to the complaint and its proper attachments. *Hale v. King*, 642 F.3d 492, 498 (5th Cir. 2011) (citation omitted).[2]

A district court's decision to grant a motion to dismiss with or without prejudice is reviewed only for abuse of discretion. *See Club Retro LLC v. Hilton*, 568 F.3d 181, 215 n.34 (5th Cir. 2009). "A district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996).

## III.

Plaintiffs challenge the district court's grant of Defendants' motion to dismiss pursuant to Rule 12(b)(6) and, the court's implicit denial of their request for leave to amend with regard to their business disparagement claim. We address the district court's decision to grant the motion to dismiss before turning to whether the court erred by implicitly denying Plaintiffs leave to amend.

---

[2] Plaintiffs do not challenge on appeal the district court's decision to exclude from consideration the declarations attached to the motion to dismiss and their response to the motion to dismiss. Moreover, our review of the record does not suggest that the declaration attached to Defendants' motion to dismiss was referenced in the amended complaint. Nor did Plaintiffs, in their response to the motion to dismiss, provide any legal authority for the court to consider the declaration attached to their response. Accordingly, we limit our review to the amended complaint.

No. 24-10186

## A.    MOTION TO DISMISS

Plaintiffs claim that the district court erred in granting Defendants' motion to dismiss because the amended complaint set forth sufficient facts to sustain each of their claims.  Our review of the amended complaint, however, reveals that it largely contains recitations of the elements of each claim with little to no factual development.  This defining feature of the amended complaint leads us to conclude that Plaintiffs' claims were properly dismissed.

### 1.    *Breach of Partnership Agreement*

A claim for breach of a partnership agreement presupposes the existence of a partnership.  Under the Texas Revised Partnership Act ("TRPA"),[3] a partnership is defined as "an association of two or more persons to carry on a business for profit as owners."  TEX. BUS. ORG. CODE § 152.051(b).  To determine whether a partnership was formed, courts consider five factors: (1) the right to receive a share of profits; (2) expression of an intent to be business partners; (3) participation, or the right to participate; (4) agreement to share, or actual sharing of, any losses, including liability for third-party claims against the business; and (5) agreement to contribute, or actual contribution of, money or property to the business.  *Id.* § 152.052(a).  The partnership formation inquiry focuses on the totality of the circumstances bearing on the five factors.  *See Nguyen v. Manh Hoang*, 507 S.W.3d 360, 371–72 (Tex. App.—Houston [1st Dist.] 2016, no pet.).  TRPA comments, however, suggest that sharing profits and control over the business are the most important factors.  *Ingram v. Deere*,

---

[3] Where, as here, diversity furnishes the basis for jurisdiction over a question of state law, we apply the substantive law of that state.  *See Antero Res., Corp. v. C&R Downhole Drilling, Inc.*, 85 F.4th 741, 746 (5th Cir. 2023).

288 S.W.3d 886, 896 (Tex. 2009). While proof of all the enumerated factors is not required to establish the existence of a partnership, conclusive evidence of only one factor is generally insufficient to establish the existence of a partnership. *Id.* at 896, 898.

Plaintiffs argue that the amended complaint contains sufficient facts showing that a partnership was formed because it states that the parties agreed to form a partnership for the purpose of hosting the Satisfied Life event, sharing the profits from the event, and jointly participating in control of the event. But these allegations do little more than repeat the partnership formation factors. *See* TEX. BUS. ORG. CODE § 152.052(a). Therefore, they are insufficient to justify reversing the district court's dismissal. *See Gulf Coast Hotel-Motel Ass'n v. Miss. Gulf Coast Golf Course Ass'n*, 658 F.3d 500, 506 (5th Cir. 2011).

Plaintiffs also point to their allegations that Cawley held herself out as Peykoff's business partner in communications with third parties, and that Peykoff provided funding, client contacts, and his business reputation for the event, while Defendants advised that their twenty-two years of experience would ensure the event's success.

Citing *Houle v. Casillas*, 594 S.W.3d 524, 549 "(Tex. App.—El Paso 2019, no pet.), Plaintiffs contend that Cawley's representing herself to third parties as Peykoff's business partner established an intent to form a partnership. But *Houle* does not aid their argument. In *Houle*, a Texas appellate court determined that there was not sufficient proof that an investor and renovator expressed an intent to form a partnership because although the investor referred to the renovator as a "partner" once in communications between them, there was no evidence that the renovator expressed a similar intent to the investor or anyone else. *Id.* The court in *Houle* thus recognized that any indication of intent must be expressed by *both* parties. *Id.* (citing

7

*Ingram*, 288 S.W.3d at 899–900). Plaintiffs do not allege in the amended complaint that Peykoff similarly held himself out as Cawley's business partner, nor do they allege any other facts as to Peykoff's intent beyond conclusory statements that recite the statutory factors of partnership formation.[4] Moreover, the Supreme Court of Texas has expressly held that "merely referring to another person as 'partner' in a situation where the recipient of the message would not expect the declarant to make a statement of legal significance is not enough." *Ingram*, 288 S.W.3d at 900. The amended complaint does not include any facts suggesting that these representations Cawley allegedly made were such that the third parties would expect them to be of legal significance.

Next, we consider the allegation that Peykoff contributed funding, client contacts, and his reputation to the event, while Defendants brought their years of experience. As explained above, one of the factors Texas courts consider in the partnership formation inquiry is where there is an "agreement to contribute, or actual contribution of, money or property to the business." *See* Tex. Bus. Org. Code § 152.052(a). Under the TRPA, "property" includes "all property, real, personal, or mixed, tangible or intangible, or an interest in that property." *Ingram*, 288 S.W.3d at 902 (internal quotation marks and citation omitted).

Defendants "do[] not automatically become . . . de facto partner[s]" by contributing intangible property such as their experience. *Id.* at 903. Rather, the value of the contribution must be "distinguished from services rendered or property given as an employee." *Id.*; *see* Tex. Bus. Org. Code § 152.052(b) (stating that a share of profits paid as "wages or other

---

[4] At oral argument, Plaintiffs claimed that Peykoff participated in these communications where Cawley held herself out as his business partner but conceded that this allegation did not appear in the amended complaint.

compensation to an employee or independent contractor" is not indicative of a partnership interest in the business). Here, the amended complaint lacks allegations showing that Defendants' contribution of their expertise went beyond that of an employee or independent contractor. To the contrary, the amended complaint states that GCP was *hired* to publish and promote Peykoff's book and that Cawley, as GCP's CEO, was Plaintiffs' primary point of contact. At oral argument, Plaintiffs argued that the parties' agreement to host the Satisfied Life event existed separately from the book promotion, but there are no allegations in the complaint making such a distinction. The amended complaint states that the parties agreed to host the Satisfied Life event "*while* discussing publishing and promotion of [Peykoff's] book" and that the Satisfied Life event was intended, at least in part, to "*further promote* [Peykoff's] book." (emphasis added). Because the amended complaint fails to show that Defendants contributed their expertise to the alleged partnership as partners, rather than as employees or independent contractors, their contribution does not suggest the formation of a partnership. *See Ingram*, 288 S.W.3d at 903 (holding that there is no partnership interest where "nothing indicates that Deere contributed or agreed to contribute . . . as a partner and not as an employee").

Plaintiffs do not allege facts demonstrating the formation of a partnership. Accordingly, the district court properly dismissed their claim for breach of partnership agreement.

### 2.     *Breach of Fiduciary Duty*

Plaintiffs contend that the district erred in dismissing their claim for breach of fiduciary duty because they alleged in the amended complaint that (1) the parties formed a partnership agreement, which is imbued with fiduciary duties; (2) Defendants breached those fiduciary duties by not reimbursing Peykoff for payments he made on behalf of the alleged

partnership after it experienced a loss, sending false correspondence to Plaintiffs' clients and potential clients, and changing important social media messaging; and (3) this breach resulted in harm to Plaintiffs while Defendants benefited.

To state a claim for breach of fiduciary duty, a plaintiff must plead the existence of a fiduciary relationship, the defendant's breach of that fiduciary duty to the plaintiff, and a resulting injury to the plaintiff or benefit to the defendant. *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. Ct. App. 2006). Plaintiffs correctly point out that a fiduciary duty arises as a matter of law in partnership relationships. *Bombardier Aero. Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 220 (Tex. 2019). But because, as explained above, Plaintiffs did not allege facts sufficient to show the formation of a partnership, they cannot rely upon the partnership relationship to show the existence of a fiduciary duty. To be sure, fiduciary duties are not exclusive to partnerships,[5] but Plaintiffs do not assert any other basis for the existence of a fiduciary duty. Accordingly, the district court did not err in finding that the amended complaint fails to state a claim for breach of fiduciary duty. *See Edward D. Jones & Co. v. Fletcher*, 975 S.W.2d 539, 542–43 (Tex. 1998) (holding that defendant cannot be liable for breach of fiduciary duty where fiduciary duty does not exist).

### 3.     *Tortious Interference with Business Relationships*

Plaintiffs challenge the district court's dismissal of their claim for tortious interference with business relationships because they alleged that Defendants sent false information to their clients, which drove those clients

---

[5] *See Stephanz v. Laird*, 846 S.W.2d 895, 901 (Tex. App.—Houston [1st Dist.] 1993, writ denied) ("The [Supreme Court of Texas] has recognized that fiduciary duties may arise in the context of informal moral, social, domestic, or personal relationships in which one person trusts and relies on another.").

to Defendants' business venture and caused Plaintiffs to suffer reputational and financial harm. The district court did not err in dismissing this claim.

"Texas law recognizes two types of tortious-interference claims: one based on interference with an existing contract and one based on interference with a prospective business relationship." *El Paso Healthcare Sys. v. Murphy*, 518 S.W.3d 412, 421 (Tex. 2017). As an initial matter, we note that it is not clear whether Plaintiffs assert one or both tortious-interference claims. In the amended complaint, Plaintiffs allege that "Peykoff and SLF had *existing contracts and business relationships* with clients associated with the Satisfied Life event and community[,]" and "Defendants willfully and intentionally made false representations to those clients." (emphasis added). They also allege that Cawley sent "false statements to [SLF] *clients and potential clients*" and that Defendants' changes to social media "create[ed] a situation where *clients and potential clients* would be driven to Defendants' services." (emphasis added). Additionally, in their opening brief, Plaintiffs cite cases governing tortious interference with both existing and prospective business relationships. Regardless, the amended complaint is insufficient to sustain either kind of tortious-interference claim.

To establish a claim for tortious interference with an existing contract, a plaintiff must show "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract," that (3) "proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Prudential Ins. Co. of Am. v. Fin. Rev. Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). Plaintiffs fail at the first step. Aside from stating in conclusory fashion that Plaintiffs "had existing contracts and business relationships with clients associated with the Satisfied Life event and community[,]" the amended complaint contains no factual allegations identifying an existing

contract.[6]  Therefore, the amended complaint is insufficient to state a claim for tortious interference with an existing contract.  *See Serafine v. Blunt*, 466 S.W.3d 352, 361–62 (Tex. App.—Austin 2015, no pet.) (finding that existing contract element of tortious interference claim was not sufficiently established where plaintiffs asserted that they "hired" a third party but did not provide details about the specific terms of the alleged contract); *accord Van Der Linden v. Khan*, 535 S.W.3d 179, 192 (Tex. App.—Fort Worth 2017, pet. denied) (finding that plaintiff failed to demonstrate an existing contract for tortious interference claim where plaintiff claimed to have a "verbal agreement" with a third party).

Plaintiffs likewise fail to allege sufficient facts to sustain a claim for tortious interference with prospective business relationships.  Such a claim requires a plaintiff to establish: (1) "a reasonable probability that the plaintiff would have entered into a business relationship with a third party"; (2) "the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct"; (3) "the defendant's conduct was independently tortious or unlawful"; (4) "the interference proximately caused the plaintiff injury"; and (5) "the plaintiff suffered actual damage or loss as a result."  *Coinmach Corp. v. Aspenwood Apt. Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).

In dismissing Plaintiffs' tortious interference claim the district court noted, *inter alia*, that Plaintiffs did not allege facts showing a reasonable probability that they would have entered into a business relationship with

---

[6] Under Texas law, a valid contract exists where there is an offer, acceptance, a meeting of the minds, consent, and execution and delivery of the contract with the intent that it be mutual and binding.  *See Levetz v. Sutton*, 404 S.W.3d 798, 803 "(Tex. App.—Dallas 2013, pet. denied).

third parties. The court explained that the amended complaint does not identify the potential clients Cawley contacted. Further, the court noted that the amended complaint describes the Satisfied Life event that these clients attended as "not successful" and resulting in significant losses.

We agree with the district court. It is true that "Texas law does not require a great deal of specificity with respect to prospective business relations." *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 798 (5th Cir. 1999). But a plaintiff is still required to show that "but for the [defendant's] interference," a business relationship was "reasonably probable, considering all the facts and circumstances attendant to the transaction." *Richardson-Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 475 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). Indeed, under the reasonable probability standard, Texas courts have rejected claims for tortious interference with business relationships where plaintiffs asserted that "mere negotiations" occurred. *Id.*; *see Milam v. Nat'l Ins. Crime Bureau*, 989 S.W.2d 126, 132 (Tex. App.—San Antonio 1999, no pet.); *Caller-Times Publ'g Co. v. Triad Commc'ns, Inc.*, 855 S.W.2d 18, 24 (Tex. App.—Corpus Christi-Edinburg 1993, no pet.). Here, Plaintiffs fail to even allege facts as to negotiations. Instead, they make the conclusory allegation that Cawley contacted "potential clients." Moreover, "the facts and circumstances attendant to the transaction" do not suggest a reasonable probability of a future business relationship. *Richardson-Eagle, Inc.*, 213 S.W.3d at 475. As the district court pointed out, Plaintiffs allege that the Satisfied Life event, with which these potential clients were associated, was "not successful." It is doubtful, rather than reasonably probable, that these clients would enter a subsequent business relationship with Plaintiffs.

Accordingly, Plaintiffs' tortious interference with business relationships claim was properly dismissed because Plaintiffs fail to allege facts establishing the existence of a contract subject to interference by

13

Defendants, or that Defendants interfered with a business relationship that was reasonably probable. *See Serafine*, 466 S.W.3d at 361–62; *Coinmach Corp.*, 417 S.W.3d at 923.

### 4.     *Business Disparagement & Negligent Misrepresentation*

We also hold that the district court did not err in dismissing Plaintiffs' remaining claims for business disparagement and negligent misrepresentation.

Although business disparagement and negligent misrepresentation are different torts, both require the plaintiff to show the falsity of information shared by the defendant. *See Forbes v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003) ("To prevail on a business disparagement claim, a plaintiff must establish[, among other things,] that . . . the defendant published false and disparaging information about it"); *Gen. Elec. Cap. Corp. v. Posey*, 415 F.3d 391, 395–96 (5th Cir. 2005) (explaining that under Texas law, one of the four elements of a negligent misrepresentation claim is that "the defendant supplies 'false information' for the guidance of others in their business"). The amended complaint plainly does not contain any facts explaining how Cawley's statements—to Plaintiffs or to clients—were false.

Regarding their business disparagement claim, Plaintiffs allege that the statements Cawley made to clients were "neither accurate nor truthful, as neither . . . Peykoff nor SLF authorized Defendants to advise clients that they no longer wished to be involved in the Satisfied Life Mastermind venture." Lack of authorization to make a statement, however, does not mean that the statement was false. Plaintiffs also allege that the Cawley's "correspondence falsely suggested that only Defendants would continue to provide such services and training in the future." But, again, this allegation does not explain why the statement was false. As Plaintiffs offer no factual

allegations to show the falsity of Cawley's statements to clients, the district court did not err in dismissing their business disparagement claim.

As to Plaintiffs' negligent misrepresentation claim, they allege that Cawley represented that she and GCP had successfully hosted similar events in the past, and that Peykoff would recover the funding he contributed to the Satisfied Life event. Plaintiffs argue that these allegations show Cawley made false statements because the Satisfied Life event ultimately failed and resulted in losses. Plaintiffs also point to their allegations that Cawley made unauthorized statements to clients that Plaintiffs were stepping down from the Satisfied Life Mastermind venture.

For the reasons explained above, the amended complaint does not state facts showing that Cawley's correspondence with clients was false. To the extent that Plaintiffs contend that the failure of the Satisfied Life event establishes that Cawley's alleged representations about her previous success and Peykoff's ability to recover his investment were false, we disagree. The failure of a future event does not show that Cawley was unsuccessful in hosting similar events in the past. And as to Cawley's alleged statement that Peykoff would recover the funding he contributed to the event, Texas law requires that the misrepresentation at issue be "one of existing fact." *BCY Water Supply Corp. v. Residential Invs., Inc.*, 170 S.W.3d 596, 603 (Tex. App.—Tyler 2005, pet. denied). "A promise to do or refrain from doing an act in the future[,]" *id.*, is not "the sort of 'false information' contemplated in a negligent misrepresentation case," *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).

The district court therefore properly dismissed Plaintiffs' claims for business disparagement and negligent misrepresentation, as there are no factual allegations in the amended complaint showing that the statements

underlying those claims were false. *See Forbes*, 124 S.W.3d at 170; *Gen. Elec. Cap. Corp.*, 415 F.3d at 395–96.

\* \* \* \*

Setting aside conclusory allegations, as we must, we hold that the amended complaint does not contain sufficient factual allegations to sustain any of Plaintiffs' claims. Accordingly, the district court did not err in granting Defendants' motion to dismiss.

## B.    Leave to Amend

Plaintiffs contend that the district court erred in dismissing their business disparagement claim with prejudice. They argue that the court should have afforded them the opportunity to amend their allegations regarding the special damages required for such claims.

Federal Rule of Civil Procedure 15(a)(2) instructs that "court[s] should freely give leave [to amend] when justice so requires." We have held, however, that "the district court is best situated to determine when plaintiffs have had sufficient opportunity to state their best case." *Club Retro L.L.C.*, 568 F.3d at 215 n.34. In exercising its discretion to allow or deny leave to amend, a district court may consider a number of factors, "including the futility of amending, the party's repeated failure to cure deficiencies by previous amendments, undue delay, or bad faith." *U.S. ex rel. Marcy v. Rowan Co., Inc.*, 520 F.3d 384, 392 (5th Cir. 2008). Futile requests to amend need not be granted. *Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016).

Plaintiffs requested leave to amend in one sentence of their opposition to the motion to dismiss, stating: "[S]hould the Court deem any additional portion of [Plaintiffs'] pleading insufficient, [Plaintiffs] respectfully request[] the opportunity to re-plead, rather than face dismissal with prejudice." The

district court implicitly denied this request when it dismissed all claims with prejudice.

Our court has a "'strong preference for *explicit* reasons' in denying leave to amend, and we have 'expressly stated that . . . a district court's failure to explain its reasons . . . typically warrants reversal.'" *N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 478 (5th Cir. 2018) (first quoting *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 426 (5th Cir. 2004); and then quoting *Marucci Sports, L.L.C. v. NCAA*, 751 F.3d 368, 378 (5th Cir. 2014)) (emphasis in original). However, where "justification for the denial is readily apparent, a failure to explain is unfortunate but not fatal to affirmance." *Id.* (quoting *Marucci*, 751 F.3d at 378). It is well-established in this circuit that "[a] bare bones" request to amend is "futile when it 'fail[s] to apprise the district court of the facts [the plaintiff] would plead in an amended complaint.'" *Edionwe v. Bailey*, 860 F.3d 287, 295 (5th Cir. 2017) (quoting *Gentilello v. Rege*, 627 F.3d 540, 546 (5th Cir. 2010)) (first alteration in original); *see also Porretto v. City of Galveston Park Bd. of Trs.*, 113 F.4th 469, 491 (5th Cir. 2024).

Here, Plaintiffs' one-sentence request, embedded in their opposition to the motion to dismiss, is insufficient to warrant reversal. Though we prefer explicit reasons denying leave to amend, "[t]he absence of any proposed amendments, compounded by the lack of grounds for such an amendment, justifies the district court's implicit denial of" Plaintiffs' request. *U.S. ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 331 (5th Cir. 2003).[7]

---

[7] We further note that Plaintiffs amended their complaint as a matter of right on the same day they filed their opposition to the motion to dismiss. The district court dismissed Plaintiffs' claims with prejudice on grounds raised in Defendants' motion to dismiss—which Plaintiffs were aware of before filing the amended complaint. Given the timing of Plaintiffs' amendment, the district court did not err to the extent that it

No. 24-10186

Therefore, we affirm the district court's dismissal of Plaintiffs' business disparagement claim with prejudice.

## IV.

For the reasons explained, the judgment of the district court is AFFIRMED.

---

determined that Plaintiffs had "sufficient opportunity to state their best case." *Club Retro L.L.C.*, 568 F.3d at 215 n.34.